UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARRON DEMARCUS BOGAN,

      Petitioner,

v.

JOHN CHRISTIANSEN,

      Respondent.

Case No. 24-cv-10427

Honorable Robert J. White

---

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING THE MOTION FOR DEFAULT JUDGMENT, DENYING THE MOTIONS FOR RELEASE ON BOND, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

---

I.    <u>Introduction</u>

      Arron Demarcus Bogan is incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan. He filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for first-degree home invasion, Mich. Comp. Laws § 750.110a(2), carrying a concealed weapon, Mich. Comp. Laws § 750.227, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, felon in possession of ammunition, Mich. Comp. Laws § 750.224f(6), and possession of a firearm in the commission of a felony (felony-firearm), Mich. Comp.

Laws § 750.227b. (ECF No. 1). Bogan also moves for (1) a default judgment against the respondent, and (2) release on bond pending resolution of the petition. (ECF Nos. 8, 12, 13).

For the following reasons, the petition for a writ of habeas corpus is denied with prejudice. The Court also denies Bogan's accompanying motions.

II. <u>Background</u>

Bogan was convicted following a jury trial in the Berrien County Circuit Court. The Court recites verbatim the relevant facts that the Michigan Court of Appeals relied upon to affirm his conviction. These facts are presumed to be correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1), *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises out of a July 30, 2019 home invasion in Sodus Township, Michigan. Shortly after the home invasion occurred, an officer in nearby Watervliet effectuated a traffic stop of a Chevrolet Cobalt operated by Warren Clark with defendant sitting in the front passenger seat, and Tony Lee and Danarus Chatwood sitting in the backseat. Incriminating evidence was found inside the vehicle, including a .45-caliber handgun, two BB guns, masks, and latex gloves similar to gloves recovered near the scene of the crime. The vehicle also contained shards of grass similar to tall grass located in a field near the crime scene. Police officers found tire tracks in that grassy field after the home invasion. Footwear impressions recovered from the scene of the home invasion were consistent with defendant's shoes.
>
> In addition, Chatwood testified at defendant's trial pursuant to a plea agreement. Chatwood described how the home invasion occurred, including that Clark carried a .45-caliber gun, that defendant and Lee carried BB guns, and that defendant and the three other men entered the

2

house.  Chatwood testified that, before the home invasion occurred, Clark displayed and loaded the firearm in front of defendant while they were parked near a river.  Chatwood also explained that when the Cobalt was pulled over by the police, Clark handed the .45-caliber gun to defendant, who then put it under his seat.  Chatwood was impeached at trial with prior inconsistent statements he had made, including statements made under oath.

In a pretrial motion, defendant challenged the legality of the traffic stop and moved to suppress evidence recovered from the Cobalt, but the trial court denied the motion.  In another pretrial motion, defendant sought to exclude Chatwood's testimony, arguing that it would comprise the knowing use of perjured testimony.  The trial court denied this request as well.  A three-day jury trial was held in the fall of 2020 over defendant's objections to various procedures used to protect against COVID-19.

*People v. Bogan*, No. 355649, 2022 Mich. App. LEXIS 1501, at *1-3 (Mich. Ct. App. Mar. 17, 2022).

Bogan seeks a writ of habeas corpus on the following grounds: (1) he was convicted via inadmissible evidence in violation of the Fourth Amendment; (2) COVID protocols at Bogan's trial violated his rights to due process and a fair trial; and (3) his rights were violated because the court admitted perjured testimony at trial. (ECF No. 1, PageID.4-8).  The Michigan Court of Appeals previously rejected these same arguments in *Bogan*, 2022 Mich. App. LEXIS 1501 at *3-19.  And the Michigan Supreme Court denied Bogan's application for leave to appeal. *People v. Bogan*, 511 Mich. 879 (2023).

III.   <u>Legal Standards</u>

28 U.S.C. § 2254(d) provides the following standard for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite from the United States Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state

court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citation omitted). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

IV.   <u>Analysis</u>

    A.   *Motion for Default Judgment*

As an initial matter, Bogan moves for a default judgment on the ground that the respondent failed to respond within three days of the petition being filed. *See* 28 U.S.C. § 2243.  Bogan also argues that Chief United States Magistrate Judge David R. Grand erred in setting a response deadline beyond section 2243's maximum twenty-day limit. (ECF No. 8, PageID.182-187).

Default judgments are unavailable in habeas corpus proceedings under 28 U.S.C. § 2254 on the basis that state officials failed to timely respond to the petition. *Allen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970); *Whitfield v. Martin*, 157 F. Supp. 2d 758, 761 (E.D. Mich. 2001).  The failure of the attorney general to respond timely does not relieve Bogan from the burden of showing that his custody is in violation of federal law. *United States v. Bawgus*, 782 Fed. Appx. 408, 410 (6th Cir. 2019). So Bogan is not entitled to a default judgment even if the answer is untimely.

Nonetheless, the attorney general adhered to Magistrate Judge Grand's responsive pleading order, which required an answer by August 22, 2024. (ECF Nos. 4, 9).  And Magistrate Judge Grand was well within his authority to direct the filing of an answer beyond section 2243's twenty-day limit.  Specifically, Bogan ignores Rule 4 of the Rules Governing Section 2254 Cases, which provides in relevant part:

> [T]he judge shall order the respondent to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate.

The United States Supreme Court enacted the 2254 Rules pursuant to 28 U.S.C. § 2072, which empowers the Supreme Court to promulgate rules of practice and procedure for federal district courts. *Hendon v. Burton*, No. 14-14023, 2014 U.S. Dist. LEXIS 183053, at *2 (E.D. Mich. Nov. 17, 2014) (citation omitted).  28 U.S.C. § 2072 indicates that such rules "shall not abridge, enlarge or modify any substantive right" and that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."

"Rule 4 of the Rules Governing Section 2254 Cases . . . has precedence over 28 U.S.C. § 2243 and gives this Court reasonable discretion to set the deadline for a response to a habeas petition." *Hendon*, 2014 U.S. Dist. LEXIS 183053, at *2-3 (citations omitted).  Because Rule 4 "has the force of a superseding statute" and "loosen[s] up the deadline for responses," it remains for "the district court to fix the

deadline." *Mahaday v. Cason*, 222 F. Supp. 2d 918, 921 (E.D. Mich 2002) (quotation marks and citation omitted).

As a result, Magistrate Judge Grand did not err in setting the response deadline approximately six months after Bogan filed his petition. The motion for default judgment must therefore be denied.

### B.     *Fourth Amendment Claim*

Bogan next claims that the state trial judge should have granted his motion to suppress evidence seized from the motor vehicle as the fruit of an illegal search and seizure. (ECF No. 1, PageID.2-8, 19-24; ECF No. 11, PageID.1684-1687).

Bogan's claim is not cognizable on habeas review. Habeas relief is unavailable where the state provided a full and fair opportunity to litigate an unlawful search-and-seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000). To satisfy this threshold, the state must (1) provide a mechanism for the petitioner to raise the claim, and (2) the mechanism must not frustrate the presentation of the claim. *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000); *James v Les Par.*, 652 F. Supp. 3d 903, 909 (E.D. Mich. 2023).

The relevant inquiry is whether the habeas petitioner had an opportunity to litigate the claim, not whether the state court decided the claim correctly. *See Wynne v. Renico*, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); rev'd on other grounds 606

7

F.3d 867 (6th Cir. 2010).  Under *Powell*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." *Brown v. Berghuis*, 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009).  An "erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id*. (citation omitted).

Bogan claims that he did not have an adequate opportunity to litigate his Fourth Amendment claim in the state trial court because (1) the state circuit judge's factual findings were somehow inadequate, (2) the prosecutor did not marshal sufficient proof to justify stopping the vehicle, and (3) "fraud on the court." (ECF No. 1, PageID.19-24; ECF No. 11, PageID.1684-1687).

The Sixth Circuit has observed that the "opportunity for full and fair consideration means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013) (quotation marks omitted).

There are several reasons for this rule.  First, *Powell* looked at "the *opportunity* for fair consideration presented by the state courts, not the procedure used in a given case to address the specific argument of a given defendant." *Id.* (emphasis in original).  Moreover, "[i]n the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire

otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id*.

Second, the rule "accords with traditional federalism and comity principles – considerations that animated *Powell* in the first instance and considerations that take center stage whenever evaluating the scope of federal habeas corpus review." *Id*. Thus, "it would be an unusual intrusion for federal courts to second-guess state procedures for resolving motions once they have been presented." *Id*.

Third, it would be "impractical" for a federal court to review the state court procedures used to adjudicate a motion to suppress because it "would raise more questions than answers." *Id*.  The Sixth Circuit observed that "[i]t is not feasible to prescribe a uniform set of procedures for every suppression dispute." *Id*. at 639-40.

Finally, and most importantly:

> [A] contrary approach would collapse the hearing inquiry into the merits inquiry.  The right to a hearing would turn on how strong the underlying exclusionary claim was, prompting an inquiry of the sort *Stone v. Powell* prohibited in order to determine whether *Stone v. Powell* applied.  Our approach, and the majority rule, asks a more basic and readily administrable question: Did the state courts permit the defendant to raise the claim or not?

*Id.* at 640.

Here, Bogan presented his Fourth Amendment claim to the state trial court in his pre-trial motion to suppress and raised the issue later in Michigan's appellate

courts. That opportunity is sufficient to preclude habeas review of his Fourth Amendment claim. *Id.*

### C.   COVID-Related Trial Restrictions

Bogan next claims that the trial court violated his right to a fair trial when it held a jury trial subject to COVID-19 protocols under Administrative Order 2020-19, to prevent the spread of the virus. Bogan alleges that the COVID-19 protocols (1) restricted his family from accessing the courtroom to support him during the trial process and hampered communication between the lawyers and witnesses, and that (2) face shields, masks, and plexiglass in the courtroom made it difficult for the jury to hear the dialogue between various parties and witnesses. Bogan also alleges that the trial lacked "a sense of judicial calm"; that his right to a speedy trial was violated; and that the trial judge should have postponed trial until the pandemic subsided, while keeping him on bond in the interim. (ECF No. 1, PageID.2-8, 25-30).

Bogan's central argument is that the COVID-19 protocols rendered his trial fundamentally unfair. In a criminal prosecution, the "denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice." *Lisenba v California*, 314 U.S. 219, 236 (1941). "[T]he floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (cleaned up). "Trial judges have a

wide latitude in conducting trials[.]" *Brown v. Palmer*, 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).  Whenever a courtroom arrangement is challenged as inherently prejudicial, the question is not whether jurors articulated a consciousness of some prejudicial effect, but whether there was an unacceptable risk of prejudice. *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986).

To obtain habeas relief, though, a habeas petitioner cannot merely "pluck general statements out from the decisions to argue that due process bars fundamentally unfair procedures." *Stewart v. Winn,* 967 F.3d 534, 539 (6th Cir. 2020) (quotation marks and citation omitted).  Instead, the Supreme Court must have confronted "the specific question presented by this case," otherwise "the state court's decision could not be 'contrary to' any holding from this Court." *Woods v. Donald*, 575 U.S. 312, 317 (2015) (per curiam) (citation omitted).  It is not enough that a petitioner's case is only "similar to" a Supreme Court case.  And the Court, in reviewing Bogan's state court conviction, must take care not to frame "the issue at too high a level of generality." *Id.* at 317-18.  So, in the absence of any Supreme Court decision invalidating the COVID-19 protocols implemented in this case, Bogan is not entitled to habeas relief.

In any event, several federal courts have upheld similar COVID-19 restrictions at the federal level, rejecting the idea that the protocols prevented the

defendant from receiving a fair trial. *United States v. Ahmed*, 73 F.4th 1363, 1378 (11th Cir. 2023); *United States v. Harris,* 51 F.4th 705, 711-13 (7th Cir. 2022).

Much of Bogan's fairness argument targets the absence of "judicial calm" at his trial since it was conducted in the midst of the pandemic.  Rejecting this portion of his claim, the Michigan Court of Appeals observed:

> Defendant also cursorily contends that judicial calm did not exist because the first day of trial was held in a different courthouse than the second and third days of trial.  No support exists for this contention. The first day of trial was held in the Niles courthouse because there was more physical space there to conduct jury selection with physical distancing.  With jury selection having been completed on the first day of trial, the second and third days of trial were held in the trial court's usual courthouse in St. Joseph.  Holding jury selection in a separate location with more physical space in an effort to protect health did not disrupt an atmosphere of judicial calm.
>
> Defendant further suggests that judicial calm was absent because an Internet outage occurred in the Niles courthouse during defense counsel's opening statement at the end of the first day of trial, thereby requiring defense counsel to complete his opening statement at the beginning of the second day of trial, which was in the St. Joseph courthouse.  When the technological problem occurred during defense counsel's opening statement at the end of the first day of trial, the trial court apologized to defense counsel in the presence of the jury and noted that he could complete his opening statement on the next day of trial.  At the beginning of the second day of trial, the trial court explained to the jury that there had been an Internet outage in the entire Niles courthouse the previous day.  Defense counsel was then permitted to complete his opening statement.  Again, defendant was entitled to a fair trial, not a perfect trial.  The trial court handled this matter fairly and judiciously.

*Bogan*, 2022 Mich. App. LEXIS 1501 at *12-13 (internal citation omitted). The Michigan Court of Appeals' decision is imminently reasonable on this score.

Next, Bogan appears to argue that the trial court violated his right to a public trial because his family was excluded from the courtroom. "The central aim of a criminal proceeding must be to try the accused fairly." *Waller v. Georgia*, 467 U.S. 39, 46 (1984). The Sixth Amendment public-trial guarantee was created to further that aim. *Id.* (citation omitted). A public trial helps to ensure that the judge and prosecutor carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury. *Id.* The closure of a criminal proceeding does not violate the Sixth Amendment right to a public trial where: (1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced by an open courtroom; (2) the party seeking closure demonstrates that the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings adequate to support the closure. *Waller*, 467 U.S. at 48. The violation of the constitutional right to a public trial is a structural trial error, not subject to the harmless error analysis. *Id.* at 49-50, n. 9.

Here, the judge allowed only the parties, lawyers, jurors, and witnesses into the courtroom. *Bogan*, 2022 Mich. App. LEXIS 1501 at *9. The trial was streamed

on YouTube, and Bogan's family members were free, along with other members of the public, to watch the trial on YouTube. *Id.*

Nonetheless, habeas petitioners may waive this fundamental right if they acquiesce to the closure or fail to object. *See Johnson v. Sherry*, 586 F.3d 439, 444 (6th Cir. 2009) (citation omitted) ("[T]he Sixth Amendment right to a trial that is 'public,' provide[s] benefits to the entire society more important than many structural guarantees; but if the litigant does not assert [it] in a timely fashion, he is foreclosed."); *see also Peretz v. United States*, 501 U.S. 923, 936-37 (1991) (citation omitted). Although structural errors are presumed to be prejudicial and thus not subject to harmless error review they are subject to general rules of waiver, forfeiture, and default. *See Johnson v. United States*, 520 U.S. 461, 466 (1997) (waived or forfeited structural error subject to plain error review under Fed. R.Crim. P. 52(b)); *see also United States v. Suescun*, 237 F.3d 1284, 1288, n. 12 (11th Cir. 2001) ("Structural defects do not absolve a defendant's waiver of a defense or objection.").

Bogan never raised a public-trial challenge in the state court (or the Michigan Court of Appeals, for that matter).[1]   Instead, counsel argued that the YouTube streaming of the trial would make it difficult to (1) know whether people were being sequestered and (2) have the "normal checks and balances of people in and around the courtroom," and that denying Bogan the ability to have his family present was "an alienating factor." (ECF No. 10-15, PageID. 769).   However, counsel never raised this issue in the context of a courtroom closure.   Bogan's failure to object specifically to the closure of the courtroom waives federal habeas review of his public trial claim. *Johnson,* 586 F.3d at 444.

---

[1] The respondent argues that this portion of Bogan's claim is unexhausted because he never presented it to the Michigan Court of Appeals.  A habeas petitioner's failure to exhaust his or her state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987).  An unexhausted claim may be adjudicated by a federal court on habeas review if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees*, 822 F. 2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies).  Federal courts should dismiss a non-federal or frivolous claim on the merits to save state courts from reviewing meritless constitutional claims. *See Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir. 1991).  Because the public trial claim is without merit, the Court chooses to adjudicate it rather than send it back to the state courts.

Even assuming this portion of Bogan's claim is not waived, he still is not entitled to relief because the courtroom was not entirely closed.

The Sixth Circuit has observed that "[n]early all federal courts of appeals . . . have distinguished between the total closure of proceedings and situations in which a courtroom is only partially closed to certain spectators." *United States v. Simmons*, 797 F.3d 409, 413 (6th Cir. 2015).  In addition, "[a]ll federal courts of appeals that have distinguished between partial closures and total closures modify the *Waller* test so that the 'overriding interest' requirement is replaced by requiring a showing of a 'substantial reason' for a partial closure, but the other three factors remain the same." *Id*. at 414 (citation omitted).

The fact that the Sixth Circuit and other federal circuit courts have modified the *Waller* test when there is only a partial closure of a courtroom demonstrates that the Supreme Court's holding in *Waller* only applies to full courtroom closures. *See Drummond v. Houk*, 797 F.3d 400, 403 (6th Cir. 2015) ("There is no clearly established Supreme Court law as to how the rules in *Waller* apply in cases, like [the p]etitioner's, where some spectators, but not all of them, were removed from the courtroom").  Several courts have held that the closure of courtrooms to implement COVID-19 protocols are permissible, particularly when the spectators could watch the proceedings over a video stream, as occurred in this case. *See United States v. Smith*, 117 F.4th 584, 596-600 (4th Cir.  2024); *United States v. Hunt,* 82 F.4th 129,

16

140-42 (2d Cir. 2023); *United States v. Ansari*, 48 F.4th 393, 401-03 (5th Cir. 2022).

So the state trial court did not infringe Bogan's right to a public trial.

Bogan also argues that the COVID-19 protocols impaired counsel's ability or his ability to view the jurors during the *voir dire* process and later at trial. The Michigan Court of Appeals rejected this claim at length:

> Defendant next raises a number of complaints related to protocols for jurors, which limited his counsel's ability to observe the jurors' physical responses. First, defendant takes issue with the fact that during voir dire, potential jurors were located in a separate assembly room before being called into the courtroom for voir dire. When defendant raised this issue before the trial court, the court noted that the lawyers were free to go to the assembly room at any point during jury selection if they wished to see the remaining potential jurors who had not yet been called into the courtroom, and the court pointed out that it had also allowed the lawyers to have an assistant or associate present in the assembly room. Defendant fails to explain how these procedures denied him a fair trial. Defendant also complains that jurors were required to wear masks and to maintain safe physical distances between each other during the trial, resulting in some jurors being seated in the portion of the courtroom normally reserved for the audience. Defendant says that his counsel could not observe the jurors throughout the trial to determine if they were paying attention, and it hindered his counsel's ability to assess jurors' responses to the evidence being presented. Defendant, however, provides no authority to dispute the trial court's observation that there is no constitutional right of confrontation with respect to jurors (as opposed to witnesses). Moreover, defendant cites no authority requiring jurors to be unmasked or to all sit together in the jury box rather than to be spread out in the courtroom. In short, defendant has provided no basis to conclude that the implementation of the contested masking and physical-distancing protocols denied him a fair trial.

*Bogan*, 2022 Mich. App. LEXIS 1501 at *9-11 (footnotes omitted).

The Michigan Court of Appeals' decision on this question is reasonable. There is no legal support that a criminal defendant has a constitutional right to face the jury. *See United States v. Petit*, 496 F. Supp. 3d 825, 828 (S.D.N.Y. 2020). Nor is there any caselaw that would require Bogan or his counsel be able to assess the jurors' unmasked faces while they listened to the trial testimony and argument. The Sixth Circuit, in a case involving the requirement that jurors remained masked throughout trial, noted that the defendant "cite[d] no authority (nor are we aware of any) holding that defendants have a constitutional right to see jurors' uncovered facial expressions during trial." *United States v. Smith*, No. 21-5432, 2021 U.S. Dist. LEXIS 35476, at *16 (6th Cir. Nov. 29, 2021). The Sixth Circuit opined that "this lack of authority certainly undercuts any assertion that requiring jurors to wear face masks during trial is a fundamental constitutional error that 'transcends the criminal process.'" *Id.* (quoting *Arizona v. Fulminante*, 499 U.S. 279, 311 (1991)).

Bogan further contends that the COVID protocols deprived him of the right to confrontation because the witnesses were either masked or behind a face shield, and the jurors could not fully assess the credibility of the witnesses because some of them were seated in the gallery or other parts of the courtroom as opposed to the jury box.

The Sixth Amendment Confrontation Clause guarantees criminal defendants an "adequate opportunity to cross-examine adverse witnesses." *United* States *v.*

18

*Owens,* 484 U.S. 554, 557 (1988) (citations omitted).   It does not, however, guarantee cross-examination that is effective in whatever way, and to whatever extent, the defense might wish. *Owens,* 484 U.S. at 559.   Moreover, the right to confrontation can be satisfied "absent a physical, face-to-face confrontation" where two conditions are met. *Maryland v. Craig* 497 U.S. 836, 850 (1990) (cleaned up). First, the denial of such face-to-face confrontation must be "necessary to further an important public policy." *Id.*   Second, the "reliability of the testimony" must be "otherwise assured." *Id.*

Here, Bogan's right to confrontation was not violated where the witnesses wore face masks because the requirement that they be masked furthered the important public policy of preventing COVID-19 transmission. *United States v. Maynard*, 90 F.4th 706, 710-11 (4th Cir. 2024).   In addition, the reliability of the witnesses' testimony was "otherwise assured because the witnesses testified under oath, were cross-examined, and the jury could observe their demeanor." *Id.* at 711-12.   Moreover, "the witnesses were physically present in the courtroom and could see and be seen by both [Bogan] and the jury." *Id.* at 712.

Although Bogan claims that the face masks prevented the jurors from being able to assess the witnesses' credibility, "jurors assess credibility not only by facial expressions, but also by the words the witnesses said . . . and how they said them, .

19

. . their body language, their pauses, their mannerisms, and all the other intangible factors that are present in a trial." *Id*. (cleaned up).

Finally, the fact that the jurors had to sit in the gallery, or other portions of the courtroom, in order to implement the court's social distancing policy did not impede Bogan's right to meaningful cross-examination.  The trial judge asked the jurors if they could hear the testimony, and they indicated they could.  Counsel had the right to cross-examine the witnesses, and they testified using courtroom microphones.  So there was no audibility impediment for the jurors seated in the public gallery. *See e.g. United States v. Tagliaferro*, 531 F. Supp. 3d 844, 850 (S.D.N.Y. 2021).  And when some jurors indicated they had trouble hearing a witness, both the judge and the prosecutor told him to speak louder, and he was advised to put the microphone under his face shield.  There were no other indications that the jurors had difficulty hearing the witnesses. *Bogan*, 2022 Mich. App. LEXIS 1501 at *11-12.  Because the trial judge immediately addressed issues when jurors could not hear a witness, the COVID-19 social distancing protocols in this case did not violate Bogan's right to a fair trial. *See People v. Kocontes*, 86 Cal. App. 5th 787, 880 (2022).

Bogan also claims that conducting the trial during the COVID pandemic caused the jurors to rush to find Bogan guilty, reaching a verdict within the hour after deliberations began.  Speculative claims are insufficient to establish a due process violation. *See Cross v. Stovall*, 238 F. App'x 32, 39 (6th Cir. 2007) ("claim is doomed

20

by the fact she makes nothing more than conclusory assertions"); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003) ("Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief."). Bogan is not entitled to habeas relief on this portion of his claim since he presented no evidence showing that the jurors rushed their deliberations to leave the courthouse as early as possible. *See United States v. Dermen*, 452 F. Supp. 3d 1259, 1265-66 (D. Utah 2020).

Lastly, Bogan argues that his right to a speedy trial was violated due to delays attributed to the COVID outbreak. He also seems to argue that the trial judge's refusal to release him on bail violated the Equal Protection Clause to the Fourteenth Amendment. The respondent counters that these claims are procedurally defaulted because he failed to raise them on direct appeal.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless the petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or else demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his or her procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). The Sixth Circuit has noted that "where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify

bypassing the procedural default issue." *Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018).

The Michigan Court of Appeals rejected Bogan's speedy trial and bail claims on the ground that he failed to adequately brief them. *Bogan*, 2022 Mich. App. LEXIS 1501 at *14-15. Under Michigan law, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *People v. Matuszak*, 263 Mich. App. 42, 59 (2004). Such cursory treatment constitutes abandonment of the issue. *Id.* Under Michigan law, a party who fails to develop any argument or cite any authority in support of his or her claim waives appellate review of that issue. *People v. Griffin*, 235 Mich. App. 27, 45 (1999). A state court conclusion that an issue was waived is considered a procedural default. *See, e.g., Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012).

Here, Bogan failed to offer any caselaw or other legal support for his speedy trial or bail claims on his direct appeal. He therefore waived review of these claims, and they are now procedurally defaulted. Bogan offers no reason to excuse the procedural default of these subclaims. Bogan did not raise a claim of ineffective assistance of counsel, or any other reason, to excuse the procedural default. And by

failing to raise any claim or issue to excuse it, Bogan "has forfeited the question of cause and prejudice." *Rogers v. Skipper*, 821 F. App'x 500, 503 (6th Cir. 2020).

For all these reasons, Bogan is not entitled to relief on his COVID restriction claims.

### D.    Perjury

Bogan finally asserts that the prosecutor engaged in misconduct by permitting a witness to offer perjured trial testimony. (ECF No. 1, PageID. 2-8, 30-33).   The Michigan Court of Appeals rejected this claim:

> Defendant argues that the prosecutor committed misconduct by knowingly using Chatwood's perjured testimony (and that the trial court erred by allowing the prosecutor to do so).  Defendant, however, has failed to establish that Chatwood committed perjury at trial, let alone that the prosecutor knowingly used perjured testimony.

> At defendant's trial, Chatwood's testimony was consistent in material respects with testimony he gave at Clark's trial, which was held in early 2020.  At both trials, Chatwood admitted to lying under oath at a previous court hearing.  Chatwood testified at both Clark's trial and defendant's trial that Chatwood himself went into the house that was the subject of the home invasion and that he saw both Clark and defendant enter the house.  Previously, however, Chatwood had denied entering the house and claimed that he stayed at the car. Although Chatwood testified at both trials that, when they were pulled over in Watervliet, Clark handed the gun to defendant who then put it under his seat, Chatwood had testified at an earlier hearing that Clark himself put the gun under the seat.  At defendant's trial, Chatwood testified for the first time that Clark displayed and loaded the gun in front of defendant while they were parked near a river before the home invasion occurred.

At both trials, Chatwood was impeached with his prior inconsistent statements and admitted that he had lied regarding certain matters in an earlier court hearing. This, however, does not by itself establish that Chatwood committed perjury at Clark's trial or defendant's trial and that the prosecutor knowingly used perjured testimony. Although an inconsistent prior statement may be a mechanism to impeach a witness's credibility at trial, it is not definitive evidence that the trial testimony is false. The jury at defendant's trial was fully informed of Chatwood's prior inconsistent testimony and statements, and it was the jury's role to determine Chatwood's credibility and the weight of his trial testimony. Although Chatwood provided additional details at defendant's trial that he did not provide at Clark's trial about Clark displaying and loading the gun in front of defendant while they were parked near a river before the home invasion, this could be explained as Chatwood providing additional facts about which he had not previously been asked. It does not necessitate a conclusion that Chatwood committed perjury at either trial. The record does not support defendant's claim that the prosecutor knowingly used perjured testimony.

*Bogan*, 2022 Mich. App. LEXIS 1501 at *16-19 (cleaned up).

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *See Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Rosencrantz v. Lafler*, 568 F.3d 577, 583 (6th Cir. 2009). "To prove that the prosecutor's failure to correct false testimony violated due process rights, a petitioner must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Rosencrantz*, 568 F.3d at 583-84. A habeas petitioner must show that

24

testimony is "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Bogan is not entitled to relief on this claim because he fails to show that Chatwood committed perjury at his trial. Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir. 1971). The only evidence that Bogan offers in support of his claim is that Chatwood changed his story from his earlier testimony at the preliminary examination. But inconsistent testimony does not establish a prosecutor's knowing use of false testimony. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). Additionally, the fact that a witness offered a contradictory statement does not establish perjury. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003). Nor does Bogan show that the prosecutor knew Chatwood testified falsely at trial. *See Rosencrantz,* 568 F.3d at 587.

At any rate, defense counsel was able to bring Chatwood's prior inconsistent statements to the attention of the jury. *See United States v. Ward,* 190 F.3d 483, 491 (6th Cir. 1999) (rejecting claim that government witness committed perjury where "the court gave the defendants several opportunities to cross-examine and recross-examine the witnesses to bring any inconsistencies in testimony to the attention of the jury. We know of no rule that stands for the proposition that, even with full cross-

examination, the introduction of perjured testimony *per se* warrants a new trial.") (emphasis in original).  And considering the corroborating evidence presented in this case, any alleged perjury was at most harmless error. *See Rosencrantz,* 568 F.3d at 588.  Therefore, Bogan fails to establish that he is entitled to a new trial on the ground that Chatwood testified falsely.

### E.   *Motions for Release on Bond*

Bogan has filed a motion to be released on bond and a supplemental motion for release on bond. (ECF Nos. 12, 13).  In order to receive bond pending a decision on the merits of a habeas corpus petition, the petitioner must show a substantial claim of law based on the facts, as well as exceptional circumstances justifying special treatment in the interest of justice. *Lee v. Jabe*, 989 F.2d 869, 871 (6th Cir. 1993). This is a high threshold to meet. *See Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990). Federal courts may grant bail when granting the writ. *See Sizemore v. District Court,* 735 F.2d 204, 208 (6th Cir. 1984).  By implication, a federal court should not grant bail under other circumstances.

Since Bogan fails to establish that he would prevail on the merits of his claims, he is not entitled to release on bail. *See, e.g., Greenup v. Snyder,* 57 F. App'x 620, 621-22 (6th Cir. 2003).  The bond motions are therefore denied.

F.     *Certificate of Appealability*

Before Bogan may appeal this Court's ruling, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits, the substantial showing test is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, as the Court has done with Bogan's speedy trial and bail subclaims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484.

The Court will deny Bogan a certificate of appealability because he fails to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).  Nonetheless, since the legal

issues presented are not frivolous, an appeal could be taken in good faith.  As a result,

Bogan may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F.

Supp. 2d 750, 765 (E.D. Mich. 2002).  Accordingly,

IT IS ORDERED that the petition for a writ of habeas corpus (ECF No. 1) is

denied with prejudice.

IT IS FURTHER ORDERED that a certificate of appealability is denied.

IT IS FURTHER ORDERED that Bogan may file an appeal in forma pauperis

because it could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P.

24(a)(3).

IT IS FURTHER ORDERED that Bogan's motions for a default judgment

(ECF No. 8) and release on bond (ECF Nos. 12, 13) are denied.

Dated: November 22, 2024            s/Robert J. White_____
                                    Robert J. White
                                    United States District Judge